<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LUIS JOSE ARELLANO, | : | Civil Action No. 19-1001 (JMV) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| BRUCE DAVIS, | : | |
| Respondent. | : | |

**VAZQUEZ, District Judge:**

Petitioner is a state prisoner currently incarcerated at New Jersey State Prison in Trenton, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (D.E. 1.) For the reasons explained in this Opinion, the Court will deny the Petition and will not issue a certificate of appealability.

**I.   BACKGROUND**

The New Jersey Superior Court, Appellate Division, summarized the underlying circumstances of this case, on direct appeal:

> In the summer of 2007, when K.S. was seven years old, she moved with her mother J.S. and her three younger sisters into M.H.'s three-bedroom apartment . . . . M.H. and her husband shared one of the bedrooms. Their daughter and grandson shared the second bedroom. J.S. shared the third bedroom with K.S. and her other two daughters.
>
> Defendant resided with his brother but slept at M.H.'s apartment on the weekends. During the week, defendant visited J.S. and the children at M.H.'s apartment. When defendant stayed at M.H.'s apartment on the weekends, he slept with J.S. in her bedroom. At those times, K.S. slept on a pull-out sofa bed in the living room.

M.H. testified that, on January 12, 2009, K.S. and her sisters came home from school. M.H. spoke with them. Initially, they said everything was "good with school," but then L.S., one of K.S.'s sisters, blurted out that "mommy and daddy were naked in the bedroom in the back room." M.H. told L.S. she would have a talk with her mother. K.S. looked "kind of angry, upset."

M.H. went into the bathroom to have a cigarette, because she had a vent in that room. J.S., K.S. and L.S. followed her. M.H. closed the lid and sat on the toilet. J.S. sat on the tub and the two girls stood by the door. According to M.H., K.S. blurted out, "Daddy touched me." M.H. looked at J.S., and J.S. looked at her.

M.H. asked K.S. what she was talking about. K.S. repeated, "Daddy touched me." M.H. asked her where defendant had touched her. K.S. repeated her statement and said, "I told mommy, mommy was supposed to tell you. . . . You were supposed to call the cops." J.S. looked surprised.

M.H. asked K.S. if she knew the difference between her and her boy cousin, and she responded that her cousin had a penis and she had a "Mary." M.H. then asked K.S. when her father had touched her, and K.S. told her this occurred at the other home where the family resided before J.S. and the children moved to M.H.'s apartment.

M.H. asked K.S. to describe what had happened. K.S. stated that her mother would be asleep in the bedroom, and defendant would come into her room. K.S. said she would close her eyes. She "wanted to make believe she was someplace else." K.S. said defendant would "get on top of her" and "go up and down" between her legs. K.S. also said that, when defendant finished and she opened her eyes, he ran and she saw that he had no clothes on.

M.H. asked K.S. if defendant touched any of her sisters, particularly L.S. K.S. said no. She told M.H. that defendant "would have killed" L.S. because, if he had gotten on top of her, she would not have been able to breathe.

M.H. called the . . . police, and police officers transported members of the family to police headquarters. After learning that the matter involved an allegation of a sexual assault, the family members were taken to the Special Victim's Unit at the county prosecutor's office. The State's Division of Child Protection and Permanency also was notified.

Detective–Sergeant Chonda Rosario interviewed K.S. After she developed a rapport with K.S., Rosario showed K.S. anatomical representations of a male and a female and asked K.S. what the pictures showed. K.S. responded that they were "Marys" and penises and pointed to each. She said girls have "Marys," which are vaginas.

Rosario asked K.S. if there were places on her body that no one is supposed to touch. K.S. said her "butt" and her "Mary." She stated that her father had touched her "butt" and her "Mary." K.S. said defendant first touched her when she was seven years old.

K.S. told Rosario that defendant would touch her at night on the weekends when she was sleeping; the touching happened at the "old house" where the family lived; and defendant would touch her "everywhere" when she was asleep. She said defendant "attacked" her when she was on the top bunk. K.S. explained that their "old house" had two bedrooms. K.S. and L.S. slept in one of the bedrooms and shared a bunk bed. L.S. slept on the bottom bunk and K.S. slept on the top bunk. Defendant and J.S. slept in the other bedroom.

K.S. said that, one day, she found defendant's black hair in her bed. She knew it belonged to defendant because he was the only one in the family with dark black hair. K.S. also knew defendant had sexually assaulted her because she saw him on top of her, and she saw him run when he got off of her. She felt defendant's penis inside her "Mary" and he was going up and down.

K.S. said she was awakened by the "emotion." When she saw defendant's face, she knew it was not a dream. She also knew it was not defendant's friend. She said defendant had "jumped" upon her. She also stated that defendant began to do this to her when she was seven years old, and he continued doing so until she was eight.

K.S. explained that sometimes defendant would touch her "butt" with his penis and put his penis in her. She said that when she was sleeping, defendant would turn her around, sit on her and put his penis on her. Defendant also used his tongue on her "Mary." K.S. said that, at these times, she was clothed and defendant had no clothes on. At other times, defendant held her head and put his penis in her mouth.

K.S. additionally explained that defendant was wearing underwear during most of the incidents she described. She said, however, that defendant was "butt naked" during the last incident, which was in

3

the living room at M.H.'s apartment. She stated that defendant removed her clothes and performed the same up and down "emotions" but faster, but she awoke and screamed and defendant ran away quickly. K.S. said her scream woke "everybody" up. K.S. drew pictures illustrating what defendant had done to her.

At the end of the interview, Rosario asked K.S. if the acts she described were something that she had seen her parents doing. K.S. said they were not. She stated that she had described what defendant had done to her, and it was the truth.

After Rosario took K.S.'s statement, K.S. was examined at the emergency room of a local medical center. No physical injuries were discovered. K.S. was also examined at the Audrey Hepburn Children's House (AHCH) at Hackensack University Medical Center; however, biological substances were not recovered due to the delay in reporting the abuse.

Dr. Nina Agrawal, a child abuse pediatrician at AHCH, testified that, in order to collect bodily fluids from a sexual assault, the forensic evidence must be collected within seventy-two hours of the assault. After ninety-six hours, it is unlikely that bodily fluids or forensic evidence can be recovered from a child. Dr. Agrawal also opined that it is rare to see injury in children who have been sexually abused and report penetration. She said physical findings are unlikely in reports of oral sex, unless there has been ejaculation, which would disappear soon thereafter.

Detective Mark Groninger testified that he took a videotaped statement from defendant. Groninger informed defendant of his *Miranda* rights. Defendant waived his *Miranda* rights in writing and agreed to give a statement. Groninger then questioned defendant about K.S.'s allegations.

Defendant admitted that he had been on top of K.S. He acknowledged that he was naked at the time, and that his penis touched K.S.'s thigh. Defendant said this incident occurred two years before the interview. He stated that K.S. woke up as he was getting off of her, and he ran out of the room.

K.S. testified. She was eleven years old at the time of the trial. She said that there were places on her body that no one is supposed to touch, specifically her chest, her "Mary" and her "butt." K.S. said defendant had touched her "butt" and "Mary" while they were living in their "old house." She explained that, after she moved to M.H.'s

4

> house with her mother and sisters, she would sleep in the living room on weekends because her father stayed over.
>
> K.S. could not recall if defendant touched her "Mary" inside or outside. She could not recall how her father touched her "butt." She did not remember what her father had been wearing when he touched her. She did not recall telling M.H. anything about her father. She stated that it hurt when defendant touched her "Mary."
>
> In addition, Dr. Lynn Taska testified for the State as an expert in Child Sexual Abuse Accommodation Syndrome (CSAAS). Dr. Taska discussed the five characteristics of CSAAS: secrecy, helplessness, entrapment and accommodation, delay and unconvincing disclosure, and retraction or recapitulation.
>
> Defendant did not testify, nor did he present any witnesses on his behalf. Defense counsel maintained, however, that K.S. had fabricated the allegations.
>
> As we noted previously, the jury found defendant guilty on counts one (aggravated sexual assault), two (sexual assault) and three (endangering the welfare of a child). Thereafter, the State filed a motion for imposition of a mandatory extended term pursuant to *N.J.S.A.* 2C:43–6.4(e), because defendant had previously been convicted of endangering the welfare of a child and his sentence had included community supervision for life (CSL). The judge granted the State's motion.
>
> The judge merged count two with count one and sentenced defendant on count one to an extended fifty-year term of imprisonment, which must be served in its entirety. The judge also sentenced defendant to a concurrent ten-year term on count three.

*State v. L.J.A.*, No. A-0493-11T4, 2013 WL 6817640, at *1–4 (N.J. Super. Ct. App. Div. Dec. 27, 2013), *certification granted, judgment rev'd*, 108 A.3d 1 (N.J. 2015) (footnotes omitted). The Appellate Division affirmed the convictions. *Id*. at 13*.

The Supreme Court of New Jersey granted certification and remanded for reconsideration on the issue of Petitioner's extended sentence in light of the recent decision in *State v. Perez*, 106 A.3d 1212 (N.J. 2015). *State v. L.J.A.*, 108 A.3d 1 (N.J. 2015). On remand, the Appellate Division reconsidered the part of its decision regarding "the extended-term sentence without the possibility

5

of parole," and remanded the matter for resentencing as to count one. *State v. L.J.A.*, No. A-0493-11T4, 2015 WL 1419484, at *1 (N.J. Super. Ct. App. Div. Mar. 31, 2015). Petitioner "was resentenced to an aggregate, extended term of fifty years in prison subject to an eighty-five percent period of parole ineligibility." *State v. L.J.A.*, No. A-2506-19, 2021 WL 1017307, at *1 (N.J. Super. Ct. App. Div. Mar. 17, 2021).

Petitioner later filed his first petition for post-conviction relief ("PCR"), and the PCR court denied the petition. *State v. L.J.A.*, No. A-1864-16T4, 2018 WL 1790111, at *1 (N.J. Super. Ct. App. Div. Apr. 16, 2018). The Appellate Division affirmed on PCR appeal, *id*. at *2, and the Supreme Court of New Jersey denied Petitioner's PCR petition for certification. *State v. L.J.A.*, 196 A.3d 962 (N.J. 2018). Petitioner filed a second PCR petition, and the PCR court denied the second PCR petition. *L.J.A.*, 2021 WL 1017307, at *1. The Appellate Division affirmed on the second PCR appeal, *id.*, and the Supreme Court of New Jersey denied Petitioner's second PCR petition for certification. *State v. L.J.A.*, 267 A.3d 1151, 1152 (N.J. 2022).

Petitioner filed the instant Petition in January of 2019. (D.E. 1.) Respondent filed an Answer opposing relief, (D.E. 7), and Petitioner filed a Reply, (D.E. 13). Petitioner had filed a motion to stay the matter while he pursued his second PCR petition in the state courts, and the Court denied that motion. (D.E. 14, 15.) Petitioner raises the following claims in this case:

1. The trial was tainted with evidence about a restraining order against defendant and his arrest for violating that order. (*Id*. at 8.)

2. Trial Counsel was ineffective for failing to present testimony of defense expert Dr. Gerald Cook at trial who previously testified at the pre-trial *Michaels* hearing. (*Id*. at 11.)

3. Trial Attorney failed to perform a background check on [M.H.] concerning her mental health, and mental health stability because she takes medication for mental health illness. (*Id*. at 12.)

6

## II. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, AEDPA deference applies even when there has been a summary denial. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))). "Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of

7

materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (internal quotation marks omitted). As to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)). If a federal

8

court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

### III. ANALYSIS

#### A. Evidence Related Claim

First, under Ground One, Petitioner contends that the trial court erred by admitting evidence of Petitioner's restraining order and arrest for violating that order. (D.E. 1, at 9.) Petitioner argues that the jury should not have seen the portion of his video interrogation where he spoke about an active restraining order. (*Id*.) According to Petitioner, "[t]his statement was supposed to be edited, but was not," and argues that "this or any other crimes were not supposed to enter trial unless defendant or the alleged victim who placed the order of protection testified." (*Id*.)

On habeas review, a district court must review the last reasoned state court decision on each claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal. The Appellate Division denied the claim as follows:

> Next, defendant argues that the trial was tainted by evidence concerning a restraining order entered against him and his arrest for violating that order. Defendant maintains that the jurors were allowed to consider the restraining order as evidence of his propensity to commit crimes, including the alleged sexual assaults for which he was being tried. Defendant also maintains that the trial

9

judge erred by failing to provide the jury with a limiting instruction regarding this evidence.

These arguments were not raised in the trial court. We therefore consider whether the evidence was erroneously admitted and, if so, whether the error was "clearly capable of producing an unjust result." *R.* 2:10–2.

The restraining order was mentioned on the videotaped statement that defendant gave to the police. Prior to the trial, defense counsel made specific requests to redact portions of the statement before it was played for the jury, but counsel did not seek redaction of the references to the restraining order.

At the trial, the State elicited brief testimony concerning the restraining order from the officers present when defendant made his statement. Defense counsel did not object to this testimony. The recorded statement was then played for the jury.

In her summation, defense counsel referred to the restraining order. She asserted the K.S.'s allegations were fantasy. She said the family had its ups and downs, noting that a restraining order had been in place in January 2009, but "everybody was ignoring [the order] because [defendant] and [J.S.] were working out their differences, [and] things were going well."

Defense counsel reviewed K.S.'s videotaped interview and argued that her allegations were not credible. She noted that defendant had been interviewed by the police and he had been cooperative. He did not hold back any information. She said defendant had acknowledged he had violated the restraining order.

The record therefore indicates that defense counsel used the restraining order in an apparent effort to discredit K.S.'s allegations. Defense counsel argued that, although J.S. and defendant had marital problems and a restraining order had been issued, defendant had continued to stay over at M.H.'s apartment on weekends and visited the children during the week. Defense counsel apparently was suggesting that defendant was an attentive father, who would not engage in the alleged unlawful acts.

If admission of evidence regarding the restraining order was an error as defendant claims, it was an error invited and acquiesced in by the defense. In our view, the doctrine of invited error precludes defendant from arguing that his conviction should be reversed because the order was mentioned at trial. A defendant cannot ask the

10

> court to take a certain course of action and, after the court has done so, " 'condemn the very [action] he sought and urged, claiming it to be error and prejudicial.' " *State v. Jenkins,* 178 *N.J.* 347, 358 (2004) (quoting from *State v. Pontery,* 19 *N.J.* 457, 471 (1955)).
>
> Furthermore, even if erroneous, the references to the restraining order were not "clearly capable of producing an unjust result." *R.* 2:10–2. The restraining order was mentioned briefly, and there was no explanation as to the reasons why the order had been issued. The order had nothing to do with the charges in this case, and the references to it were not likely to lead the jury to believe that defendant was predisposed to commit the sexual offenses for which he was being tried.
>
> Moreover, despite defendant's claim to the contrary, the trial judge provided the jury with a limiting instruction regarding the restraining order. The judge stated, "[y]ou have heard testimony about a restraining order and you are not to draw an adverse inference regarding the restraining order that existed January 12, 2009." The judge added that this evidence "should not enter your deliberations or discussions in any manner at any time." We must assume the jury followed the judge's instruction. *State v. Scherzer,* 301 *N.J.Super.* 363, 437 (App.Div.1997), *certif. denied,* 151 *N.J.* 466 (1997).

*L.J.A.*, 2013 WL 6817640, at *8–9 (alterations in original).

Here, the state court's decision was not an unreasonable application of clearly established federal law, and Petitioner has not raised a valid constitutional violation. In his direct appeals, save for a passing reference to the Sixth and Fourteenth Amendments, Petitioner relied almost entirely on the New Jersey Rules of Evidence and state law cases. (*See* D.E. 7-8, at 56–57; D.E. 7-9, at 1–7.) The Appellate Division, in turn, addressed the issue in terms of state law. *L.J.A.*, 2013 WL 6817640, at *8–9.

"Where Petitioner has alleged no specific violation of federal law, or has raised no federal constitutional issue, his evidentiary argument is not within the province of the [federal habeas court] to address." *Oliver v. Santiago*, No. 14-1334, 2017 WL 2735409, at *9 (D.N.J. June 23, 2017) (alteration in original) (quoting *Bagarozy v. Goodwin*, No. 08-0468, 2008 WL 4416455, at

11

*14 (D.N.J. Sept. 23, 2008)).  Such errors would have been errors of state law, and federal habeas "relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).  Instead, "[t]o rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights." *E.g.*, *Sample v. D'Ilio*, No. 15-5487, 2018 WL 3054676, at *5 (D.N.J. June 20, 2018) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994); *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001)).

The Court perceives no error from the Appellate Division with respect to the admission of evidence related to Petitioner's restraining order.  Although the trial court might have generally prohibited the admission of the restraining order as "other crimes" evidence under New Jersey Rule of Evidence 404(b)(1), Petitioner "cannot complain on appeal of alleged errors invited or induced by himself." *United States v. Maury*, 695 F.3d 227, 256 (3d Cir. 2012) (quoting *United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993)).  This is true because under the invited error doctrine, "when a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession." *Lesende v. Borrero*, 752 F.3d 324, 337 (3d Cir. 2014) (internal quotation marks omitted).  The Appellate Division noted that "[p]rior to the trial, defense counsel made specific requests to redact portions of the [video] statement before it was played for the jury, but counsel did not seek redaction of the references to the restraining order." *L.J.A.*, 2013 WL 6817640, at *8.  Further, during summation, defense counsel repeatedly mentioned the "restraining order in an apparent effort to discredit K.S.'s allegations. . . [and] argued that, although J.S. and [Petitioner] had marital problems and a restraining order had been issued, [Petitioner] had continued to stay over at M.H.'s apartment on weekends and visited the children during the week."

12

*Id*. Consequently, the Appellate Division concluded that "[i]f admission of evidence regarding the restraining order was an error as [Petitioner] claims, it was an error invited and acquiesced in by the defense." *Id*. As a result, the Appellate Division reasonably applied the invited error doctrine to preclude Petitioner "from arguing that his conviction should be reversed because the order was mentioned at trial." *Id*. Additionally, the Appellate Division reasoned that no prejudice had occurred as the trial court issued a jury instruction advising the jury that they may not draw an adverse inference regarding the restraining order. *Id*. at *9. The Appellate Division, like this Court, must presume that the jury followed the trial court's instructions. *See, e.g.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Taliaferro v. Balicki*, No. 11-4714, 2013 WL 5539033, at *17 (D.N.J. Oct. 7, 2013).

Petitioner has failed to demonstrate any evidentiary error, let alone one that was so "arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Sample*, 2018 WL 3054676, at *5. Alternatively, assuming *arguendo* that it was an error to let the jury know about the restraining order, it was an error of Petitioner's own creation. *Lesende*, 752 F.3d at 337. As a result, Petitioner has failed to show that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Ineffective Assistance of Counsel Claims

Next, Petitioner raises multiple claims of ineffective assistance of counsel. The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14

(1970)). To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the petitioner. *See id.* at 687.

The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.  In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id*.  The Constitution requires a fair trial, not some higher quality of legal representation.  *See id.* at 688–89.  Thus, the standard is highly deferential, and courts presume that counsel has "rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires a petitioner to demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The petitioner bears the burden of demonstrating how he was prejudiced.  Thus, where a petition contains "no factual matter . . . and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280–81 (D.N.J. 2015) (internal quotation marks omitted) (citations omitted).

A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" courts should follow that course.  *Id.*  Finally, even if a petitioner can establish

14

both prongs of *Strickland*, a habeas petition fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti*, 537 U.S. 19, 24–25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

The Court addresses Grounds Two and Three together because the state courts addressed them collectively. Under Ground Two, Petitioner contends that trial counsel was ineffective for failing to present the testimony of defense expert Dr. Gerald Cook at trial. According to Petitioner, Dr. Cook viewed K.S.'s video statement and "at the end of his report he had concluded that it was either a form of exaggeration, a lie, or a fantasy," and that the "victim was in fact enjoying all the attention she was receiving from the allegations." (D.E. 1, at 11.) Under Ground Three, Petitioner contends that trial counsel was ineffective for failing to investigate the mental health of K.S.'s grandmother, M.H., and for failing to conduct a background check on M.H. (*Id*. at 12.) Petitioner alleges that M.H. "has a long history of mental health illness, in which she seeks . . . therapy, and also takes mental health medications." (*Id*.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal. The Appellate Division denied the claim for substantially the same reasons set forth in the PCR court's opinion, and the PCR court stated as follows:

> In a supplemental brief Petitioner argues that trial counsel was ineffective for failure: . . . to perform a background check on M.H. concerning her mental health history and mental health stability because she takes medication for mental health issues; . . . and to present the testimony of defense expert, Dr. Gerald Cook, at trial who had previously testified at the pre-trial *Michaels* hearing.
>
> In order for a claim of ineffective assistance of counsel to entitle a post-conviction relief petitioner to an evidentiary hearing, bald assertions are not enough-rather, the Petitioner must allege facts sufficient to demonstrate counsel's alleged substandard performance. *State v. Jones*, 219 N.J. 298, 311-312 (2014), quoting *State v. Cummings*, 321 NJ. Super. 154, 170, (App. Div.), certif. denied, 162 NJ. 199, (1999). Petitioner must allege facts sufficient

15

to demonstrate counsel's alleged substandard performance. *Cummings supra*. 321 N.J. Super. at 170 (App. Div. 1999). Thus, when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification. *Id*. A bald assertion by a petitioner (that he would have rejected the plea and gone to trial) is insufficient to satisfy the second prong of the test, and a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla v. Kentucky*, 559 US 356 (2010).

In *State v. Cummings*, petitioner claimed that he was denied the effective assistance of counsel because his attorney advised him that if he testified and presented an alibi defense, his juvenile adjudications could be used to impeach his credibility. The Court concluded that "this bare assertion of an alibi at this late date, without more, is insufficient to support a prima facie case of ineffectiveness. We note that petitioner has not supplied an affidavit or certification of [alibi witness] that would support petitioner's alibi. Moreover, petitioner has not demonstrated why [alibi witness] did not testify at his trial." *Cummings supra*, 321 N.J. Super. At 170-71 (App. Div. 1999).

Similarly in *State v. Powell*, No. A-0952-11T2 (App. Div. May 20, 2013), Petitioner alleged fourteen grounds for ineffective assistance of counsel including but not limited to: "Trial Counsel Failed To Object To The Exclusion Of Potential African-American Jurors During The Jury Selection Process", "Trial Counsel Failed To Prepare For Trial By Failing To Adequately Conduct A Pre-Trial Investigation And Interview Potential Material Witnesses", "Trial Counsel Failed To Call An Expert on Psychology: and "Trial Counsel Failed To Pursue An Affirmative Defense Of Diminished Capacity". *Id*. at 6. The trial court noted that, Petitioner "has attempted to throw out fourteen assertions as to why [the] court should grant an evidentiary hearing in the hopes that one of these unsupported allegations would 'stick', and ultimately result in a retrial." *Id*. Further the trial court noted Petitioner "has not alleged sufficient facts to demonstrated counsel's substandard performance by way of affidavits, certifications, or even explanation beyond a one sentence bald assertion for each ground. Thus, none of the fourteen allegations meet the prima facie burden to warrant an evidentiary hearing." *Id.* The Appellate Court in affirming the trial court's decision found no additional facts or records to support the allegations of Petitioner as "they [were] not part of this record."

16

> It is the view of this Court, as in *Cummings* and *Powell*, Petitioner has made a bare assertion of misrepresentation of evidence without any factual support, nor any corroborated evidence in the record, and without explanation beyond a single sentence for the ground. As such, Petitioner has not met the burden established in *Strickland*. (*see also*, *State v. Castagan*, 187 N.J. 293, 314 (2006), Held: the quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance.).

(D.E. 7-19, at 11–13 (alterations in original)); *see L.J.A.*, 2018 WL 1790111, at *2 ("We therefore affirm substantially for the reasons expressed by Judge Venable in her opinion.").

Here, the state court's decision was not an unreasonable application of clearly established federal law. The Court has reviewed Petitioner's counseled supplemental PCR brief and his counseled PCR appellate brief, (D.E. 7-18, at 27; D.E. 7-22, at 41–42), and agrees that they were insufficient to support a *prima facie* case of ineffective assistance of counsel. Petitioner devoted only one sentence to each of these claims. Petitioner failed to explain what mental issues M.H. had or how they might have affected the trial. (D.E. 7-18, at 27; D.E. 7-22, at 41–42.) Similarly, Petitioner failed to explain what testimony Dr. Cook would have provided or how it might have affected the trial.[1] (D.E. 7-18, at 27; D.E. 7-22, at 41–42.) Further, the PCR court found that Petitioner failed to provide any factual support or corroborating evidence. (D.E. 7-19, at 11–13.)

Consequently, the Appellate Division, in adopting the PCR court's opinion, reasonably concluded that Petitioner's vague and conclusory allegations were insufficient to demonstrate that counsel was ineffective. *George v. United States*, No. 20-2523, 2021 WL 3233909, at *1 (3d Cir. Mar. 3, 2021) (finding that "'vague and conclusory allegations' about evidence that should have [been] presented or testimony that should have been elicited are insufficient to meet his burden to

---

[1] Although Petitioner provided a brief explanation of Dr. Cook's alleged testimony in his § 2254 Petition, he did not provide an explanation in his PCR petition or PCR appellate brief. (D.E. 7-18, at 27; D.E. 7-22, at 41–42.)

17

show that his counsel was ineffective"); *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (finding that petitioner's vague and conclusory claim did not establish prejudice under *Strickland*); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) ("Zettlemoyer cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention.").

Accordingly, as Petitioner has failed to demonstrate that the Appellate Division unreasonably applied either prong of *Strickland*, he is not entitled to habeas relief on this claim.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, this Court will not issue a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons discussed, the Court will deny the Petition and will not issue a certificate of appealability. An appropriate Order accompanies this Opinion.


Dated: March 18, 2022

                                                                   JOHN MICHAEL VAZQUEZ
                                                                   United States District Judge